# United States Court of Appeals

## For the Eighth Circuit

_____

No. 11-2905

_____

United States of America

*Plaintiff - Appellee*

v.

Deondre Cordell Higgins

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: February 16, 2012
Filed: March 29, 2013

_____

Before LOKEN, BYE, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

In a bench trial, Deondre Higgins was found guilty of conspiring to distribute crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846, and distributing crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). The district court found that Higgins's conspiracy conviction qualified for an enhanced sentence under § 841(a)(1) and (b)(1)(A) because of two prior felony drug offenses and that Higgins was a career offender under U.S.S.G. § 4B1.1 because of two prior

controlled substance convictions.  The court sentenced Higgins to a mandatory term of life imprisonment for the conspiracy conviction and a concurrent term of 360 months' imprisonment for his distribution conviction.  Higgins appeals the district court's finding of guilt and its sentencing rulings.

## I.

On November 20, 2008, a grand jury returned a six-count indictment charging Higgins and four other individuals with conspiring to distribute crack cocaine. Higgins was charged specifically under count one with conspiracy to distribute fifty grams or more of crack cocaine and under count five with distribution of crack cocaine.[1]

Trial commenced on September 27, 2010. Testimony from co-defendants Darl Douglas Denson and Stacie Emmerich, as well as witness Michelle Carlisle, indicated that Higgins purchased large quantities of crack cocaine from Denson and then resold it to numerous others.  Denson testified that these sales occurred at regular intervals from October 2007 to November 2008, and the amounts Denson testified he sold to Higgins added up to more than 5,000 grams over the course of that time period.

Higgins also was involved in individual sales of crack cocaine to Detective James Armstead. Armstead testified about three separate drug transactions in January 2008 and identified Higgins as the person with whom he negotiated these deals over the phone.  Higgins, who is confined to a wheelchair, remained in another vehicle during each transaction while Emmerich or another woman delivered the drugs to Armstead in person. Following two of these transactions, tactical officers stopped the

---

[1]The indictment also charged Higgins under count two with possession with intent to distribute 50 grams or more of crack cocaine, but this count was later dismissed on the government's motion.

vehicle Higgins was in and recovered from Higgins marked bills that Armstead had used in the transactions.

On November 15, 2010, the district court found Higgins guilty beyond a reasonable doubt on both counts. Count one of the indictment had charged Higgins with conspiring to distribute fifty grams or more of crack cocaine under § 841(b)(1)(A), and the same amount was listed in the court's final judgment; however, the district court specifically noted in its findings of guilt that the conspiracy had involved 280 grams or more of cocaine base—the amount required under § 841(b)(1)(A) as amended by the Fair Sentencing Act of 2010, which Congress enacted after Higgins's indictment had been returned. In determining the quantity of crack cocaine that was involved in the conspiracy, the district court credited Denson's testimony that demonstrated he had sold Higgins in excess of 5,000 grams over the course of Higgins's involvement in the conspiracy.[2] In finding Higgins guilty under count five of the indictment, the court credited Detective Armstead's testimony, which established that Higgins had knowingly and intentionally distributed crack cocaine on two occasions.

The district court held two sentencing hearings on July 6 and August 30, 2011. Before trial, the government had filed a notice of its intent to use prior convictions to enhance Higgins's sentence pursuant to 21 U.S.C. § 851. The notice listed two prior felony drug convictions:

1)      Geary County, KS Case # 95CR583; felony possession of cocaine within 1000 feet of a school; Conviction date: 11/13/1995;

---

[2]In order to avoid duplication, the district court based its determination of quantity on Denson's testimony alone, and did not add to that amount the quantities testified to by Carlisle, Emmerich, or Detective Armstead.

2) Clay County, MO Case # CR100-3135F; felony trafficking cocaine second degree, felony delivery cocaine (2 counts); Conviction date: 05/01/2001.

In the initial sentencing hearing, a dispute arose as to whether Higgins's 1995 conviction had been for "felony possession," as the notice stated, or whether it was for felony possession with intent to distribute. While a handwritten journal entry for Higgins's conviction indicated that he pled *nolo contendere* to "possession,"[3] other documents, including the original criminal complaint and the plea agreement signed by Higgins, indicated that he pled *nolo contendere* to possession with intent to sell.[4] The district court recessed the sentencing hearing so that a transcript of Higgins's Kansas plea hearing could be obtained to settle this dispute.

After reconvening on August 30, 2011, the court determined that the plea transcript clearly established Higgins's Kansas conviction was for possession with intent to sell. Higgins objected that the misidentification of this conviction in the government's § 851 notice rendered the document defective and deprived him of due process. The district court overruled Higgins's objections and sentenced him under count one to the mandatory life imprisonment pursuant to § 841(a)(1) and (b)(1)(A). The court also sentenced Higgins as a career offender to 360 months' imprisonment on count five, which was to be served concurrently with the life sentence. Higgins appeals.

---

[3]The same document, however, indicated he was convicted under 1994 K.S.A. 65-4161 (a), and (d), which prohibited possession with intent to sell, deliver or distribute drugs within 1000 feet of school property—not mere possession.

[4]The presentence report noted and the district court took judicial notice of the fact that no Kansas statute exists for mere possession of a narcotic within 1000 feet of a school.

-4-

II.

Higgins argues that there was insufficient evidence of his guilt under counts one and five of the indictment. "'We review the sufficiency of the evidence after a bench trial in the light most favorable to the verdict, upholding the verdict if a reasonable factfinder could find the offense proved beyond a reasonable doubt . . . .'" United States v. Huggans, 650 F.3d 1210, 1222 (8th Cir. 2011) (quoting United States v. Kain, 589 F.3d 945, 948 (8th Cir. 2009)).

To convict Higgins of conspiracy to distribute cocaine, the government had to prove that a conspiracy existed, that Higgins knew of the conspiracy, and that he intentionally joined that conspiracy. See United States v. Williams, 534 F.3d 980, 985 (8th Cir. 2008). Viewing the evidence in a light favorable to the verdict, the corroborating testimony of Denson, Emmerich, Carlisle, and Detective Armstead was more than adequate for a reasonable factfinder to conclude under count one that Higgins both knew of and had intentionally joined the conspiracy. Likewise, Armstead's testimony and the evidence recounted above about individual transactions in January 2008 were more than adequate for a reasonable factfinder to conclude under count five that Higgins knowingly and intentionally distributed crack cocaine.[5]

---

[5]Citing Anders v. California, 386 U.S. 738 (1967), Higgins also argues for the first time on appeal that his conviction under count five was "duplicitous" of his conviction under count one. However, because Higgins contends that he should not have been charged with "both counts," we read his argument as actually challenging his conviction as "multiplicitous" (a single offense charged in more than one count) rather than "duplicitous" (a single count charging more than one offense). See United States v. Street, 66 F.3d 969, 974–75 (8th Cir. 1995). Having reviewed the record independently pursuant to Penson v. Ohio, 488 U.S. 75 (1988), we have found no nonfrivolous issue regarding either argument.

III.

Higgins's challenges to his sentence merit more discussion. Higgins argues first that there was a defect in the government's § 851 notice of its intent to use prior convictions for enhancement purposes because it misidentified one of his prior convictions. Higgins also argues that the district court erred in sentencing him as a career criminal because he avers that he did not have the two predicate controlled substance offenses that are required for enhancement. Finally, Higgins argues for the first time on appeal that his indictment was defective because it failed to indicate the quantity of crack cocaine actually involved in the conspiracy. We address these arguments in turn.

A.

Higgins argues specifically that because his § 851 notice misidentified his prior conviction as "possession" rather than "possession with intent," it deprived him of sufficient notice of the government's intent to seek a sentencing enhancement.[6] We review de novo whether the government's notice complied with § 851. United States v. Sturdivant, 513 F.3d 795, 803 (8th Cir. 2008). Section 851 states that the government must file notice before trial or before entry of a guilty plea if it intends to use prior convictions to enhance the defendant's sentence. However, the section also provides that "[c]lerical mistakes in the information may be amended at any time prior to the pronouncement of sentence." 21 U.S.C. § 851(a)(1). The statute does not define "clerical mistakes," but the Eighth Circuit has described them as errors "where the government's initial information still gave the defendant 'reasonable notice of the

_____

[6]Higgins does not challenge on appeal the district court's finding that he was, in fact, convicted of "possession with intent." He concedes that no Kansas statute prohibited mere possession of drugs within 1000 feet of school, and he now argues only that the § 851 notice was defective because it listed a conviction for a crime that doesn't exist, rather than the crime for which he was actually convicted.

Government's intent to rely on a *particular* conviction.'" <u>Sturdivant</u>, 513 F.3d at 804 (quoting <u>United States v. Curiale</u>, 390 F.3d 1075, 1076 (8th Cir. 2004) (per curiam)).

On appeal, Higgins does not dispute that the § 851 notice he received included the correct date, case number, and county of origin for his 1995 conviction. However, the notice did mislabel the conviction as being for felony possession of cocaine within 1000 feet of a school—an offense that does not exist in Kansas—rather than felony possession of cocaine with intent to distribute—the offense for which the district court in this case concluded he had actually been convicted. Higgins contends that this was more than a mere clerical mistake and that it deprived him of reasonable notice that his 1995 conviction would be used to enhance his sentence because the conviction it listed was not an actual offense.

We find Higgins's argument unpersuasive, and conclude that the error in the government's notice was similar to other clerical mistakes we have previously identified. In <u>Curiale</u>, we reviewed a § 851 notice that erroneously listed the defendant's earlier crime as "sale" rather than "possession" of illegal drugs. 390 F.3d at 1077. The government's notice in that case otherwise correctly identified the county of origin, date of conviction, and case number of the original conviction, and we therefore concluded it was a correctable mistake under § 851(a)(1). <u>Id.</u> Similarly, the notice sent to Higgins in the present case included the county of origin, date of conviction, and case number of the conviction. <u>See also</u> <u>United States v. King</u>, 127 F.3d 483, 489 (6th Cir. 1997) (clerical error on conviction date did not render information defective because it otherwise detailed the correct offense and location of conviction); <u>Perez v. United States</u>, 249 F.3d 1261, 1266–67 (11th Cir. 2001) (same); <u>United States v. Weaver</u>, 267 F.3d 231, 248 (3d Cir. 2001) (information not defective where clerical error listed previous conviction for "involuntary manslaughter" instead of "voluntary manslaughter").

The purpose of the § 851 notice requirement is to provide the defendant with "notice of the prior conviction, the effect it would have on the maximum sentence, and an opportunity to dispute the conviction." United States v. Timley, 443 F.3d 615, 626 (8th Cir. 2006). The error in the § 851 notice did not deprive Higgins of notice about which conviction the government intended to use, the enhancement of his sentence for which they were asking, or an opportunity to dispute the conviction. Higgins did, in fact, dispute the conviction: he unsuccessfully argued at sentencing that the conviction was for mere possession within 1000 feet of a school—an offense that he now concedes does not exist in any Kansas statute. Higgins was also unsuccessful in his argument that neither his 1995 Kansas conviction nor his 2001 Missouri conviction qualified for enhancement purposes.

B.

Higgins argues that the district court erred in sentencing him as a career offender because he did not have two prior "controlled substance offense" convictions as required by the sentencing guidelines. Although Higgins's brief could be read as tying this argument to the § 851 notice issue, we construe it as a separate argument.[7] This argument has no bearing on Higgins's life sentence under count one. The mandatory term of life imprisonment for count one following two or more prior felony drug offense convictions under § 841(b)(1)(A) overrides any advisory guidelines range for the offense. Higgins does not dispute that he was convicted of

---

[7]To the extent that Higgins may have intended to link this issue to any purported defect in the § 851 notice, we note that "it is well-settled that a § 851 information is limited to situations in which a convicted defendant's *statutory* minimum or maximum penalty is enhanced under Part D of Title 21, and not to [an enhancement under the now-advisory guidelines] which is within a statutory range." United States v. Bailey, 677 F.3d 816, 817–18 (8th Cir. 2012) (alterations in original) (internal quotation marks omitted).

two prior felony drug offenses.[8]  However, the district court's finding that Higgins was a career offender may have influenced his sentence under count five, and we will therefore address his argument.

Higgins was sentenced to 360 months under count five, which was the statutory maximum under § 841(b)(1)(C).  His offense level was 37, and his criminal history category was VI, giving rise to a sentencing range of 360 months to life.  Had Higgins not received an enhancement as a career criminal under § 4B1.1(b), his base offense level would have been 36 and his criminal history category would have been IV, giving rise to a sentencing range of 262 to 327 months.

Higgins argues that his Clay County, Missouri, conviction in 2001 does not qualify as a predicate offense for enhancement purposes under § 4B1.1(b).  The Missouri conviction was based on two counts: count one was for "felony trafficking cocaine second degree," and count two was for "felony delivery cocaine."  Higgins argues, and the government concedes, that because "felony trafficking" could be based on mere possession, it does not meet the definition of "controlled substance offense" under § 4B1.2(b).[9]  The government contends, however, that because Higgins was convicted under count two for felony delivery—which Higgins does not dispute meets the definition of "controlled substance offense"—the career offender enhancement was proper.

---

[8]"Felony drug offense" is defined as "an offense that is punishable by imprisonment for more than one year under any law that prohibits or restricts conduct relating to narcotic drugs." 21 U.S.C. § 802(44).

[9]"Controlled substance offense" is defined as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or counterfeit substance) or the possession of a controlled substance (or counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b).

Higgins draws the court's attention to <u>King v. United States</u>, 595 F.3d 844 (8th Cir. 2010), in which we vacated a sentence that had been enhanced under § 4B1.1 because of a novel and sophisticated argument about the grouping of prior convictions. <u>King</u> involved a technical reading of how criminal history points are assigned to groups of prior convictions. Although the analysis there involved prior crimes of violence as defined in § 4B1.2(a), it applies equally to controlled substance offenses under § 4B1.2(b).

A conviction is not a "prior felony" within the meaning of § 4B1.1 unless it receives criminal history points under § 4A1.1(a), (b), or (c). When prior convictions are grouped together because they occurred on the same occasion—as Higgins's 2001 Clay County offenses, which occurred on the same day, were grouped—a question arises about which conviction receives criminal history points under § 4A1.1. <u>See</u> <u>King</u>, 595 F.3d at 849. "In order to determine which subsection of § 4A1.1 a group of related prior sentences fall under, we '[u]se the longest sentence of imprisonment if concurrent sentences were imposed.'" <u>Id.</u> (quoting U.S.S.G. § 4A1.2(a)(2)). Higgins received three criminal history points under § 4A1.1(a) for his 2001 Clay County conviction, which grouped together a twenty-year sentence for trafficking, and a ten-year sentence for delivery, running concurrently. According to § 4A1.2(a)(2), however, when multiple offenses are grouped together, the longest sentence should get the criminal history point. <u>See</u> <u>King</u> 595 F.3d at 849. For Higgins, this would mean the non-predicate trafficking offense. If Higgins's 2001 delivery offense did not receive a criminal history point, it cannot be considered a prior felony conviction for sentencing purposes.

Finding this reading of the guidelines "plausible" in <u>King</u>, <u>id.</u> at 850, we applied the rule of lenity and gave the defendant the benefit of the reading which resulted in a shorter sentence, <u>id.</u> at 852. The same reading applies to Higgins's sentence of 360 months' imprisonment under count five, and we therefore vacate that sentence and remand for resentencing.

C.

The indictment charged Higgins with violating 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 by conspiring to distribute fifty grams or more of crack cocaine. The judgment entered found him guilty of that offense. Higgins argues for the first time on appeal that his indictment should have charged him with conspiring to distribute 280 grams or more of crack cocaine, pursuant to the Fair Sentencing Act of 2010 (FSA), and that the indictment was therefore fatally defective.

Enacted on August 3, 2010—almost two years after Higgins's indictment was returned—the FSA changed the threshold quantity of crack cocaine required by § 841(b)(1)(A)(iii) from fifty grams to 280 grams. See Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (Aug. 3, 2010). This circuit had previously held that the FSA did not apply retroactively, "even as to defendants who were sentenced after the enactment of the FSA where their criminal conduct occurred before the enactment." United States v. Sidney, 648 F.3d 904, 910 (8th Cir. 2011). However, the Supreme Court recently announced that the FSA's more lenient penalties for crack cocaine convictions do apply to sentences imposed after passage of the Act for pre-Act crimes, Dorsey v. United States, 132 S. Ct. 2321, 2331 (2012), thus abrogating our decision in Sidney. United States v. Gamble, 683 F.3d 932, 933 (8th Cir. 2012).

Despite the retroactive application of the FSA, Higgins must now do more than prove that his indictment was technically defective. Because Higgins did not challenge the quantity listed in the indictment before the trial court his argument is reviewed under a plain error standard. See United States v. Lee, 374 F.3d 637, 650 (8th Cir. 2004). Under this standard, Higgins must now prove that "the indictment was defective and that it seriously affected the fairness and integrity of the judicial proceedings." Id. at 651 (citing United States v. Cotton, 535 U.S. 625, 631 (2002)).

Even if, in light of <u>Dorsey</u>, it was error for Higgins's indictment to list the pre-FSA quantities required by § 841(b)(1)(A)(iii), Higgins has not attempted to show how it seriously affected the fairness and integrity of the judicial proceedings. Aware that the FSA might be applied retroactively, the government agreed before trial to meet the burden of proving Higgins's conspiracy involved 280 grams or more of crack cocaine, as is now required under the Act. Furthermore, at Higgins's bench trial the district court explicitly found beyond a reasonable doubt that the conspiracy involved in excess of 5,000 grams of crack cocaine. The fact that Higgins's indictment listed pre-Act quantities did not affect the fairness or integrity of the judicial proceedings where it was established at trial that the conspiracy involved amounts of cocaine base far in excess of the current requirements. <u>See</u> <u>Cotton</u>, 535 U.S. at 632–33 (concluding that an indictment's failure to allege drug quantity required by pre-FSA version of § 841(b)(1)(A) "did not seriously affect the fairness, integrity, or public reputation of judicial proceedings" when "evidence that the conspiracy involved at least 50 grams of cocaine base was 'overwhelming' and 'essentially uncontroverted.'").

IV.

Accordingly, we affirm in part the decision of the district court, but we vacate Higgins's sentence for distribution under count five and remand for further sentencing.

_____