NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3862
_____

UNITED STATES OF AMERICA

v.

DAMON AGURS,
Appellant
_____

On Appeal from United States District Court
for the Western District of Pennsylvania
(W.D. Pa. No. 2-12-cr-00100-001)
District Judge:  Honorable Cathy Bissoon
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 15, 2015

Before:  FISHER, CHAGARES and JORDAN, *Circuit Judges*.

(Filed: October 6, 2015)
_____

OPINION[*]
_____

FISHER, *Circuit Judge*.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Damon Agurs appeals his conviction in the United States District Court for the Western District of Pennsylvania. He argues the District Court erred by (A) denying his motion to withdraw his guilty plea and (B) denying his pretrial motions to suppress evidence obtained from Title III intercepts and a warranted search and for *Franks* hearings. We will affirm.

I.

We write principally for the parties, who are familiar with the factual context and legal history of the case. Therefore, we will set forth only those facts that are necessary to our analysis.

During an investigation into heroin trafficking in western Pennsylvania, the Federal Bureau of Investigation obtained a Title III warrant to tap a cell phone believed to be used by Agurs. Subsequently, a surveillance team stopped Agurs for a traffic violation, confiscated 500 stamp bags of heroin from his back pocket, and took him into custody. Shortly after his arrest, police obtained a warrant to search Agurs's person, car, and house, and the person and car of Juan Gordon, from whom police believed Agurs purchased heroin. Officers found in the house a digital scale, a bag containing drug paraphernalia, and letters and bills indicating Agurs resided there. Gordon had $2,811 in cash on his person.

A grand jury indicted Agurs for conspiracy and possession with intent to distribute heroin. Agurs requested a pre-plea presentence investigation report, which concluded that

2

he was a career offender under § 4B1.1 of the Sentencing Guidelines and faced a guideline range of 262 to 327 months' imprisonment if convicted.

Agurs moved to suppress the Title III evidence and joined Gordon's motion to suppress evidence obtained through the warranted search. Both motions requested *Franks* hearings. The District Court held a hearing and denied the motions. Once other pretrial motions were disposed of, Agurs and the government entered into a Rule 11(c)(1)(C) plea agreement with a stipulated sentence of 120 months' imprisonment. The plea agreement contained a waiver of appellate rights with limited exceptions. After the change of plea hearing but before sentencing, Agurs moved to withdraw his guilty plea because he became aware of a decision under which, he argued, the career offender guideline should not apply to him. The District Court denied the motion after a hearing. Over Agurs's objection, the District Court determined that the career offender guideline applied and the final advisory guideline range was a term of imprisonment of 151 to 188 months. The District Court sentenced him to the stipulated 120 months, which it described as a downward variance.

## II.

The District Court had jurisdiction over this criminal action under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

3

III.

A.

Agurs argues that the District Court erred in denying his motion to withdraw his guilty plea because he was unaware of *King v. United States*,[1] which he contends provides a "strong argument" he is not career offender under the Sentencing Guidelines.[2] According to Agurs, had he known he had a basis to challenge his career offender designation, he would not have agreed to plead guilty. Challenging the validity of his guilty plea is barred by the appellate waiver in the plea agreement, and we will not review this issue unless the waiver is not knowing or voluntary or would work a miscarriage of justice.[3] Agurs argues that his lack of awareness of the *King* decision renders his plea not knowing and voluntary and provides an exception to his appellate waiver. We disagree.

The District Court conducted a thorough colloquy at the change of plea hearing, and Agurs affirmed that he understood his plea agreement, the maximum penalties applicable to the offense, and the waiver of his right to appeal the validity of his guilty plea. The District Court discussed with Agurs the advisory nature of the Sentencing Guidelines, and the fact that the applicable guideline range could only be determined after the completion of a presentence investigation report. Other than the contents of the

---

[1] 595 F.3d 844 (8th Cir. 2010).
[2] Agurs's Br. 12.
[3] *United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005).

4

plea agreement, Agurs disclaimed that anyone had made any prediction or promise about what his actual sentence would be. Even if Agurs's reading of the *King* decision is correct—and we note that the District Court found he was a career offender notwithstanding *King*—Agurs's misunderstanding about how the Sentencing Guidelines would apply to him did not render his plea unknowing or involuntary, even if the misunderstanding was caused by counsel's mistake.[4] Agurs's guilty plea was not unknowing or involuntary and enforcing the appellate waiver does not constitute a miscarriage of justice.[5] Thus, we will enforce the appellate waiver with respect to reviewing Agurs's motion to withdraw his guilty plea and affirm the District Court's denial of that motion.[6]

---

[4] *United States v. Ramirez-Hernandez*, 449 F.3d 824, 826 (8th Cir. 2006) ("A defendant may not withdraw a plea … merely because he misunderstands how the sentencing guidelines will apply to his case."); *see United States ex rel. Scott v. Mancusi*, 429 F.2d 104, 108 (2d Cir. 1970) ("An erroneous sentence estimate by defense counsel does not render a plea involuntary." (internal quotation marks omitted)).

[5] Agurs notes that a defendant is entitled to effective representation during the plea bargaining process. To the extent Agurs wishes to raise a claim of ineffective assistance of counsel, he may do so in a collateral proceeding. *See Massaro v. United States*, 538 U.S. 500, 504 (2003).

[6] Assuming without deciding that *Johnson v. United States*, 135 S. Ct. 2551 (2015), invalidates the residual clause of the career offender enhancement, Agurs's appellate waiver did not preserve his right to challenge his career offender enhancement. An intervening change in law does not render the appellate waiver unknowing or involuntary. *United States v. Lockett*, 406 F.3d 207, 213 (3d Cir. 2005) ("The Supreme Court has explained that where subsequent developments in the law expand a right that a defendant has waived in a plea agreement, that change does not make the plea involuntary or unknowing or otherwise undo its binding nature.").

B.

The appellate waiver in Agurs's plea agreement specifically carved out his right to appeal the denial of the motions to suppress and for *Franks* hearings, and we now consider those issues. In reviewing a probable-cause determination, courts consider whether the issuing authority "had a substantial basis for concluding a search would uncover evidence of wrongdoing."[7] "Reviewing courts must defer to determinations of probable cause made by the judicial officer who issued the warrant if, based on the whole affidavit, there is a reasonable common sense likelihood that the search will uncover evidence of criminal acts."[8] We review the District Court's findings of fact for clear error and exercise plenary review over its legal conclusions.[9]

A search warrant based upon an affidavit intentionally or recklessly including a material false statement or omitting material information violates the Fourth Amendment.[10] Evidence obtained under the authority of an invalid search warrant must be suppressed.[11] In *Franks v. Delaware*, the Supreme Court held that, under certain circumstances, a defendant is entitled to a hearing to challenge the truthfulness of statements made in a search-warrant affidavit.[12] To obtain a *Franks* hearing, a defendant must "(1) make a substantial preliminary showing that the affiant knowingly or recklessly

---

[7] *United States v. Deaner*, 1 F.3d 192, 196 (3d Cir. 1993).
[8] *Id.*
[9] *United States v. Tracey*, 597 F.3d 140, 146 (3d Cir. 2010).
[10] *United States v. Pavulak*, 700 F.3d 651, 665 (3d Cir. 2012).
[11] *United States v. Yusuf*, 461 F.3d 374, 389 (3d Cir. 2006).
[12] 438 U.S. 154, 171–72 (1978).

6

included a false statement in or omitted facts from the affidavit, and (2) demonstrate that the false statement or omitted facts are necessary to the finding of probable cause."[13]

1.

Agurs argues that the affidavit for the Title III warrant contained conclusory and speculative statements, included a material misrepresentation, and did not adequately explain why other investigative methods were insufficient. Agurs claims that the intercepted conversations reported in the affidavit did not directly discuss heroin and that references to his house, his parking lot, and his associates do not mean that he was involved in any meetings or drug transactions. But it would be highly unusual for conspirators to discuss drugs by their proper names rather than coded or oblique references, and an investigating agent's interpretations of coded conversations can support a finding of probable cause.[14] Reviewing the affidavit as a whole, we find a substantial basis supporting the finding of probable cause.

An earlier Title III warrant application, which was incorporated by reference into the challenged warrant affidavit, misattributed an intercepted conversation to Agurs. The government admits the error, but Agurs cannot establish that the misattribution was necessary to the finding of probable cause. The District Court correctly determined that

---

[13] *Pavulak*, 700 F.3d at 665 (internal quotation marks omitted).

[14] *See United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000) ("The issuing judge … may give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found . . . ." (quoting *United States v. Caicedo*, 85 F.3d 1184, 1192 (6th Cir. 1996))).

7

ample evidence outside of the misattributed call demonstrated probable cause, and denial of the request for a *Franks* hearing was not erroneous.[15]

Finally, the affidavit sufficiently explained the need for Title III interceptions.

2.

Agurs also challenges the warrant to search the vehicles and bodies of Agurs and Gordon and Agurs's residence. The affidavit states that information was provided by a confidential source, but the identity of the confidential source was a law enforcement officer and not a third party. According to Agurs, this is a material misrepresentation. Supplying the omitted information—that the confidential source was a law enforcement officer and the information was derived from Title III intercepts—we conclude that, to the extent it was a misrepresentation, it was not material. If anything, this additional information would have strengthened the affidavit. The District Court did not err in denying this motion to suppress and request for a *Franks* hearing.

IV.

For the reasons above, we will affirm the judgment of the District Court.

---

[15] This Court has not yet identified the standard of review for a district court's denial of a motion for a *Franks* hearing, and it is not necessary to do so here because even under de novo review, denial of the motion for a *Franks* hearing was correct. *See Pavulak*, 700 F.3d at 665.