# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3753

_____

United States of America,               *
                                   *

          Appellee,       *

                                   *

    v.                      *

                                   *

Bernice Enriquez Luna,        *

                                   *

          Appellant.     *

                                   Appeals from the United States
                                   District Court for the Southern
    _____               District of Iowa.

No. 03-3874

    _____

United States of America,               *
                                   *

          Appellee,       *

                                   *

    v.                      *

                                   *

Catherine Lynn Arce,          *

                                   *

          Appellant.     *

_____

Submitted:  May 11, 2004

Filed:  May 17, 2004

_____

Before MURPHY and FAGG, Circuit Judges, and GOLDBERG,[*] Judge of the United States Court of International Trade.
_____

FAGG, Circuit Judge.

Iowa State troopers saw a Ford Explorer and a motor home traveling together on Interstate 80. When the Explorer was stopped for speeding, the motor home failed to move out of the lane next to the stopped vehicles, even though the passing lane was open. A trooper stopped the motor home. Bernice Enriquez Luna was driving, and Catherine Lynn Arce was a passenger. The women gave different stories about their travel plans and the amount of time they had known each other. After issuing Luna a warning ticket and informing her she was free to leave, the trooper asked Luna to consent to a search of the motor home. She said, "Okay," and signed a written consent to search form. Troopers found methamphetamine in the motor home, and arrested Luna and Arce. The search of the motor home continued at the Iowa State Patrol Post. Officers discovered a suspicious panel on the vehicle's undercarriage, removed it, and found 954 pounds of marijuana. Luna and Arce made incriminating statements captured on videotape while the troopers were searching the motor home by the Interstate, and directly to officers after they found the marijuana.

The Government charged Luna and Arce with conspiracy to distribute marijuana, possession with intent to distribute marijuana, and possession of methamphetamine. After the district court[**] denied their motion to suppress, Luna and Arce conditionally pleaded guilty. In this consolidated appeal, Luna and Arce challenge the denial of their motion to suppress. Reviewing the district court's

---

[*]The Honorable Richard W. Goldberg, Judge of the United States Court of International Trade, sitting by designation.

[**]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

factual findings for clear error and reviewing de novo the questions of law regarding probable cause and reasonable suspicion to stop the motor home, we affirm. See United States v. Mallari, 334 F.3d 765, 766 (8th Cir. 2003) (standard of review).

Luna and Arce contend the troopers did not have probable cause or a reasonable suspicion to believe Luna had committed a traffic violation. An officer's observation of a traffic violation, however minor, gives the officer probable cause to stop a vehicle, even if the officer would have ignored the violation but for a suspicion that greater crimes are afoot. United States v. Martinez, 358 F.3d 1005, 1009 (8th Cir. 2004). Here, a trooper saw the motor home driven by Luna fail to slow down or to move into the open passing lane when it passed the trooper's vehicle, which had stopped the Ford Explorer. The trooper believed the driver of the motor home had violated Iowa law, and wrote a warning ticket for the violation of Iowa Code § 321.323A (unsafe approach to emergency auto). Section 321.323A requires that

> 1. The operator of a motor vehicle approaching a stationary authorized emergency vehicle that is displaying flashing yellow, amber, white, red, or red and blue lights shall approach the authorized emergency vehicle with due caution and shall proceed in one of the following manners, absent any other direction by a peace officer:
>
> a. Make a lane change into a lane not adjacent to the authorized emergency vehicle if possible in the existing safety and traffic conditions.
>
> b. If a lane change under paragraph "a" would be impossible, prohibited by law, or unsafe, reduce the speed of the motor vehicle to a reasonable and proper speed for the existing road and traffic conditions, which speed shall be less than the posted speed limit, and be prepared to stop.

The district court found the trooper had a reasonable basis for believing the driver of the motor home had violated the statute. It was clear from the trooper's videotape that there was no vehicle in the left hand lane, and there was no indication

that there were any other road or traffic conditions that would have interfered with the motor home's ability to make the lane change. We conclude the trooper's decision to stop the motor home was reasonable because the circumstances, viewed objectively, justified the conclusion by a law enforcement officer that a traffic law had been violated. Mallari, 334 F.3d at 766-67.

Luna and Arce also assert Luna's consent to the search was not voluntary and was tainted by the stop's illegality. We have already decided the traffic stop was legal. To determine whether consent to search is voluntary, courts consider the totality of the circumstances, including characteristics of the accused and details of the interrogation, to decide whether the consent was the product of a free and unconstrained choice or the product of duress or coercion, express or implied. See United States v. Mancias, 350 F.3d 800, 804-05 (8th Cir. 2003). Law enforcement officers may ask a person for consent to search or other types of cooperation without violating the Fourth Amendment as long as they do not induce cooperation by coercive means. United States v. Yang, 345 F.3d 650, 654 (8th Cir. 2003). "[T]he time it takes for an officer to find out if consent will be given cannot be an unlawful detention in the absence of coercive or otherwise unusual circumstances." Id.

After examining the totality of the circumstances, the district court found Luna voluntarily consented to the search. The district court observed Luna was a middle-aged woman who appeared to be of average or above average intelligence; there was no indication she was intoxicated or otherwise under the influence of drugs when she consented to the search; Luna did not assert she was threatened, physically intimidated, or punished by police; she did not assert she relied on any promises or misrepresentations by the trooper; she was detained for about twenty-five minutes after the motor home was stopped before she consented; she was not under arrest or in custody while the search took place; the search occurred alongside Interstate 80; and there was no indication Luna voiced any objections to the troopers about the search as it took place. See Mancias, 350 F.3d at 805 (listing relevant characteristics

of consenting person and environment in which consent is given). The district court also observed the questions asked of Luna while she was seated in the patrol vehicle were reasonable and related to the traffic stop, and the questions about whether she had any illegal substances in her possession did not create a coercive environment. See United States v. Morgan, 270 F.3d 625, 630 (8th Cir. 2001). Under the circumstances, we conclude the district court's finding that Luna's consent was voluntary is not clearly erroneous. Martinez, 358 F.3d at 1009.

We thus affirm the district court's denial of the motion to suppress.

_____