# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1907

_____

United States of America,      *
                                                  *

           Appellee,           *

                                   *    Appeal from the United States

      v.                          *    District Court for the

                                   *    Western District of Missouri.

Joshua P. Randolph,            *

                                                  *

          Appellant.          *

_____

Submitted: November 16, 2010
Filed: January 11, 2011

_____

Before WOLLMAN, HANSEN, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Joshua Randolph entered a conditional plea of guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He appeals from the district court's[1] denial of his motion to suppress evidence, contending that his Fourth Amendment rights were violated when police officers initiated a traffic stop without reasonable suspicion to do so and unlawfully searched the vehicle he had been driving. We affirm.

_____

[1]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable Robert E. Larsen, United States Magistrate Judge for the Western District of Missouri.

## I. Background

Detective Don Stanze of the Kansas City police department and his partner were conducting surveillance when they noticed Randolph driving a gold Chevrolet Monte Carlo. Stanze recognized Randolph from a previous drug investigation and recognized the Monte Carlo as belonging to a woman whom Stanze knew to traffic phencyclidine (PCP). Stanze decided to follow Randolph.

Randolph drove to a residence, where he stopped and went inside. Two months earlier, Stanze had received information that PCP was sold from the residence that Randolph visited. After a minute or so, Randolph returned to the vehicle and drove to a different residence, where he pulled into the driveway, exited the Monte Carlo, and entered the residence. While there, Randolph met with some people and drank a beer on the sidewalk in front of the house. After about half an hour, Randolph left the house, with the detectives following him.

When Randolph stopped at a third residence, he pulled to the curb without indicating his intent with his turn signal, which constituted a traffic violation. At that point, Stanze asked a nearby uniformed patrol officer to stop the vehicle based on the traffic violation and Randolph's public consumption of alcohol. Stanze informed the officer that the driver of the vehicle was Randolph and that he was known to carry a gun.

Officer Kenny Miller arrived as Randolph exited the Monte Carlo. Miller pulled up alongside the Monte Carlo and activated his emergency lights. Miller exited his vehicle and asked Randolph to return to the car. Randolph responded that it was not his car. When Miller asked whether Randolph had exited the Monte Carlo, Randolph repeated that the car was not his and indicated that he had exited from the car parked in front of the Monte Carlo. At Miller's request, Randolph returned to the Monte Carlo and placed his hands on the hood.

-2-

Miller frisked Randolph, retrieved his identification, and handcuffed him. Miller then asked dispatch to run a criminal history check and was informed that Randolph was a felon. Sergeant John Bryant arrived and spoke on the phone to Detective Stanze. Bryant looked through the passenger's side window and saw a handgun lying on the driver's side floorboard. Bryant asked Miller if Randolph was a felon, and Miller responded that he was. At that point, Bryant reached through the open window, unlocked the car door, and examined the gun. Bryant noticed the smell of PCP in the car and found illegal drugs in the car's console. Randolph was arrested for being a felon in possession of a firearm, public consumption of alcohol, and turning without signaling.

A subsequent search of the vehicles revealed a High Point .380 semi-automatic handgun, crack cocaine, powder cocaine, PCP, marijuana, and documents in the name of Joshua Randolph.

Randolph moved to suppress evidence seized from his vehicle and his person on the basis that the police did not have reasonable suspicion to justify the stop and the search of the vehicle was illegal. The facts set forth above reflect the testimony that Stanze, Miller, and Bryant gave at the suppression hearing. The magistrate judge recommended that the motion be denied because (1) probable cause supported the traffic stop, (2) Randolph lacked standing to challenge the search, and (3) even if he had standing, the search of the car was a valid search incident to arrest. The district court adopted the report and recommendation. On reconsideration in light of the Supreme Court's decision in Arizona v. Gant, 129 S. Ct. 1710 (2009), the magistrate judge recommended that Randolph's renewed motion to suppress be denied because the search remained a lawful search incident to arrest. The district court again adopted the magistrate judge's report and recommendation.

## II. Discussion

Randolph contends that his motion to suppress should have been granted. He argues that the police lacked reasonable suspicion to conduct an investigative stop, that the search incident to arrest was illegal under Arizona v. Gant, and that he had a legitimate expectation of privacy in the vehicle he had been driving. In reviewing the denial of a motion to suppress evidence, we review the district court's findings of fact for clear error and review *de novo* its legal conclusions. United States v. Adler, 590 F.3d 581, 583 (8th Cir. 2009).

## A. Traffic Stop

An officer may initiate a traffic stop after the driver has stopped the car and exited the vehicle. See Thornton v. United States, 541 U.S. 615, 621-24 (2004). The decision to stop the driver is reasonable if the officer has probable cause to believe a traffic violation occurred. See Whren v. United States, 517 U.S. 806, 810 (1996). "Any traffic violation, however minor, provides probable cause for a traffic stop." Adler, 590 F.3d at 583 (quoting United States v. Bloomfield, 40 F.3d 910, 915 (8th Cir. 1994) (en banc)). This is true "even if the officer would have ignored the violation but for a suspicion that greater crimes [were] afoot." United States v. Pena-Ponce, 588 F.3d 579, 583 (8th Cir. 2009) (quoting United States v. Luna, 368 F.3d 876, 878 (8th Cir. 2004)).

We have held that failing to signal a turn, in violation of the law, is sufficient probable cause to support a traffic stop. See Adler, 590 F.3d at 585 (failure to signal in violation of the Nebraska traffic code sufficient to establish probable cause); see also United States v. Rodriguez-Lopez, 444 F.3d 1020, 1022-23 (8th Cir. 2006) (officer's objectively reasonable belief that the defendant's failure to signal violated Iowa code sufficient to establish probable cause). Randolph does not dispute that his

failure to signal violated Kansas City municipal code;[2] instead he argues that the violation was a ruse to justify the stop.  As stated above, however, a traffic violation provides probable cause to justify a stop, even if the officer is suspicious of other crimes.  Randolph's traffic violation thus justified the subsequent stop.

## B.  Search Incident to Arrest

Randolph contends that Bryant's search of the Monte Carlo was not a proper search incident to arrest.  Under Arizona v. Gant, "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest."  129 S. Ct. at 1723.  The magistrate judge determined that Randolph was under arrest for being a felon in possession of a firearm and that it was reasonable to believe the Monte Carlo contained the firearm.  Randolph contends that Bryant did not know that Randolph was a felon when he reached into the Monte Carlo, unlocked and opened the door, and inspected the gun.  According to Randolph's argument, he was under arrest only for failing to signal and for public consumption of alcohol.

The record, however, supports the magistrate judge's finding that Randolph was under arrest for the firearm offense when Bryant first entered the Monte Carlo.  Bryant testified that he looked through the window and saw the firearm in plain view.  Miller testified that after Bryant observed the gun, Bryant approached Miller, told him there was a gun on the floorboard, and "asked if he come back as a registered felon, and I answered yes."  Miller further testified that Bryant thereafter reached into the car, opened the door, and handled the gun.  Bryant initially testified that after he inspected the firearm, he verified that Randolph was a felon.  He later testified that after

_____

[2]To the extent Randolph disputes the fact that he failed to signal, we note that Stanze testified that Randolph failed to signal, and we conclude that the finding to that effect is not clearly erroneous.

-5-

observing the gun through the car's window, he asked Miller if Randolph was a felon and Miller responded, "yeah, I think he is." The magistrate judge credited Miller's testimony and found that Miller had been informed that Randolph was a felon, that Miller told Bryant that Randolph was a felon, and that Randolph was under arrest for the firearm offense before Bryant reached into the Monte Carlo. Miller's testimony, as well as a portion of Bryant's testimony, supports these findings.

Accordingly, the search was lawful under Arizona v. Gant because the Monte Carlo contained evidence of the firearm offense. After Bryant observed the gun and Miller confirmed that Randolph was a felon, the officers had probable cause to arrest and did arrest Randolph for possessing a firearm. Having observed a gun on the driver's side floorboard, Bryant completed a lawful search incident to arrest.

## C. Standing

Even if the search of the Monte Carlo were unconstitutional, we conclude that Randolph has no standing to challenge the search. Randolph repeatedly disclaimed any possessory or ownership interest in the car. When Miller stopped him, Randolph denied having exited the Monte Carlo. To contest the validity of a search, a person must have a reasonable expectation of privacy in the place searched. See Katz v. United States, 389 U.S. 347, 351-52 (1967). "Fourth Amendment rights are personal and may not be vicariously asserted." United States v. Washington, 197 F.3d 1214, 1216 (8th Cir. 1999) (quoting Alderman v. United States, 394 U.S. 165, 174 (1969)) (internal omissions and alterations omitted). Since Randolph had repeatedly disavowed any ownership interest in the Monte Carlo and failed to otherwise show that he had a legitimate expectation of privacy in the Monte Carlo, he is precluded from claiming that the search of the Monte Carlo and the seizure of the firearm violated his constitutional rights. See United States v. Amaral-Estrada, 509 F.3d 820, 827 (7th Cir. 2007) (concluding the defendant failed to manifest any expectation of privacy because the defendant possessed the car for purposes of transporting

contraband, others had entered the vehicle for the purpose of taking or leaving items therein, and the defendant denied knowledge about the car and its contents); see also Washington, 197 F.3d at 1216 (concluding that defendant lacked standing to challenge the search of a bag because he disclaimed any ownership interest in the bag).

## III.  Conclusion

The order denying the motion to suppress is affirmed.

_____