# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-2566

_____

United States of America

*Plaintiff - Appellee*

v.

Donald R. Turner, Jr.

*Defendant - Appellant*

_____

No. 13-2572

_____

United States of America

*Plaintiff - Appellee*

v.

Antonio Turner

*Defendant - Appellant*

_____

No. 13-2574

_____

United States of America

*Plaintiff - Appellee*

v.

Corey E. Turner, Sr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: September 11, 2014
Filed: March 18, 2015

_____

Before RILEY, Chief Judge, SMITH and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Corey E. Turner, Sr., Donald R. Turner, Jr., and Antonio Turner appeal their convictions and sentences on drug-related charges. After reviewing all issues raised on appeal, we affirm.[1]

## I. Background

In the spring of 2010, the Drug Enforcement Administration and the police department in Sikeston, Missouri, began an investigation into a local drug-distribution conspiracy. During the course of the investigation, law enforcement came to believe that Joe Lenzie Turner, along with several of his friends and family

_____

[1]We have jurisdiction pursuant to 28 U.S.C. § 1291.

-2-

members, were involved in a conspiracy to distribute both powder and crack cocaine in and around the Sikeston area. Some of the other individuals allegedly involved in the conspiracy included Corey Turner, Sr.,[2] Donald Turner, Jr., Antonio Turner, Dwayne Woods, and Jerriereneika Dorsey. On August 18, 2011, the above-listed individuals and eleven others were charged in a 21-count indictment in the Eastern District of Missouri. All seventeen were charged with conspiracy to distribute cocaine; the remaining charges were substantive drug charges against some of the defendants. Most of the defendants pleaded guilty, with some entering into cooperation agreements with the government. Corey Turner, Donald Turner, and Antonio Turner went to trial on a seven-count superseding indictment. During trial, Joe Lenzie Turner and Jerriereneika Dorsey both testified as cooperating witnesses for the government. The jury found all three defendants guilty of conspiracy to possess with intent to distribute five kilograms or more of cocaine and additionally found them guilty on all substantive drug charges. On appeal, the defendants contest the denial of their motions to suppress, several evidentiary rulings at trial, the sufficiency of the evidence, and their sentences.

## II. Discussion

### A. Motions to Suppress

During the investigation of the conspiracy, the government obtained multiple Title III wiretap orders[3] for some defendants' phones, as well as separate warrants for

---

[2]Corey Turner, Jr., was also indicted in this case, though he is not involved in the present appeal. We will refer to Corey Turner, Sr., as Corey Turner, and Donald Turner, Jr., as Donald Turner.

[3]Title III wiretap orders are provided pursuant to 18 U.S.C. § 2518.

Precise Location Information[4] (PLI) for phones used by Joe Lenzie Turner and Dwayne Woods. One of the wiretap orders purportedly authorized the seizure of PLI from Corey Turner's phone as well. Corey Turner and Donald Turner filed motions to suppress the evidence obtained as a result of these orders and warrants. The magistrate judge[5] recommended denying all of the motions, and the district court[6] adopted the recommendation after addressing the defendants' objections.

"When reviewing a district court's denial of a suppression motion, we review the court's factual findings for clear error and its legal conclusions de novo." United States v. Castellanos, 608 F.3d 1010, 1015 (8th Cir. 2010). A district court's decision denying a motion to suppress will be affirmed "unless it is unsupported by substantial evidence on the record; reflects an erroneous view of applicable law; or after a thorough review of the record, we have a definite and firm conviction that a mistake has been made." Id.

### 1. PLI Warrants

The first suppression issue on appeal involves the three warrants authorizing the government to obtain prospective PLI from Joe Lenzie Turner's and Dwayne Woods's phones. Corey Turner moved to suppress the evidence seized pursuant to these warrants, and the district court denied the motion on the merits. Both in the district court and on appeal, the government asserts there is no need to address the

---

[4]"Precise Location Information" has not been defined by the parties, though it is used in the court orders in this case to refer to the physical location of the phone based on longitude and latitude or other similar points of reference.

[5]The Honorable Lewis M. Blanton, United States Magistrate Judge for the Eastern District of Missouri, now retired.

[6]The Honorable John A. Ross, United States District Judge for the Eastern District of Missouri.

merits of Corey Turner's motion because he lacks standing to challenge the seizure of the evidence.[7]

"To contest the validity of a search, a person must have a reasonable expectation of privacy in the place searched." United States v. Randolph, 628 F.3d 1022, 1026 (8th Cir. 2011). "Fourth Amendment rights are personal and may not be vicariously asserted." Id. (quotation omitted). With regard to the content of cell phones, "an accused must first establish that he personally has a legitimate expectation of privacy in the object that was searched." United States v. Stringer, 739 F.3d 391, 396 (8th Cir. 2014).

Corey Turner has failed to establish that he has standing to challenge the issuance of the warrants for PLI for phones belonging to Joe Lenzie Turner and Dwayne Woods. Corey Turner does not assert that he owned, possessed, or used either of these cell phones; nor does he describe any other legitimate expectation of privacy in these phones or in the PLI obtained from them.[8] Without any argument to

---

[7]Though the district court denied the motion on other grounds, the government raised the issue of standing both before the district court and on appeal. The district court declined to address Corey Turner's standing to challenge the PLI warrants in this case, but it is a "'well-settled principle' that a district court may be affirmed on any ground supported by the record," particularly where the issue has not been waived by the parties. United States v. Lucas, 499 F.3d 769, 779 n.5 (8th Cir. 2007) (quoting United States v. Pierson, 219 F.3d 803, 807 (8th Cir. 2000)). We therefore address the issue of standing on appeal.

[8]In Stringer, we found the defendant lacked standing to challenge a search of a cell phone that was found in his car but belonged to another person. 739 F.3d at 396. The cell phone contained evidence that incriminated the defendant. Id. But, similar to this case, the defendant in Stringer did not argue that he had a reasonable expectation of privacy in the content of the third party's cell phone, and thus, we concluded, he lacked standing to challenge the search. Id. In this case, law enforcement obtained PLI for Joe Lenzie Turner's and Dwayne Woods's phones, not

support the conclusion that he had a legitimate expectation of privacy in these phones or their location, Corey Turner has failed to meet his burden to establish standing to challenge the seizure of this evidence. See Stringer, 739 F.3d at 396.

## 2. Wiretap Orders and Necessity

Donald Turner unsuccessfully moved to suppress all evidence seized as a result of the Title III wiretap orders issued during the investigation. On appeal, he asserts the district court erred in concluding the government had shown the requisite necessity to justify the issuance of the orders.

The Wiretap Act requires that any application for a wiretap include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous . . . ." 18 U.S.C. § 2518(1)(c). "If law enforcement officers are able to establish that conventional investigatory techniques have not been successful in exposing the full extent of the conspiracy and the identity of each coconspirator, the necessity requirement is satisfied." United States v. West, 589 F.3d 936, 939 (8th Cir. 2009) (quotation omitted). When reviewing a lower court's finding that the necessity requirement has been satisfied to support authorization for a wiretap order, this Court reviews for clear error. Id.

In this case, the affidavits in support of the application for each Title III wiretap order set forth the investigative techniques law enforcement had used, as of that point,

_____

content contained in their phones, through the use of stand-alone PLI warrants. Although PLI is different than recorded phone conversations or photographs stored on a phone, the standing analysis in Stringer remains relevant; the defendant must establish a reasonable expectation of privacy in the phone tracked with a PLI warrant, just as he must establish a reasonable expectation of privacy in a phone searched for other reasons.

to gather evidence of the purported conspiracy: interviews with confidential sources, use of confidential informants to conduct controlled buys of drugs from suspected conspirators, monitored and/or recorded telephone calls initiated by cooperating individuals, physical surveillance, limited use of pole cameras and GPS devices, pen registers, trap and trace devices, and some collected financial information.

The affidavits also described techniques unlikely to be successful or too dangerous to undertake under the circumstances. The affiant explained that the use of undercover agents would not likely "further the objectives of the investigation" and might place an undercover agent in danger, because those involved in the conspiracy were either part of the Turner family or close friends, making it difficult to infiltrate the organization. The affiant also discussed the fact that those involved in the conspiracy were closely monitoring their surroundings and were possibly using surveillance cameras of their own, so physical surveillance, trash searches, and the use of additional pole cameras by law enforcement would not provide access to the desired information. GPS devices had been used to track suspects' cars, but some suspects had taken to driving rental or borrowed vehicles to purchase drugs to avoid being tracked. The affiant also explained that, while traditional investigative techniques had uncovered a great deal of information about the criminal activities of the targets, the familial nature of the enterprise and the counter-surveillance techniques used by participants in the conspiracy prevented law enforcement from determining who was supplying the drugs, where the drugs were being stored, or what the full structure of the organization looked like.

Donald Turner counters that one of the confidential informants—CI #1—was a member of the family. As a family member, Donald Turner argues, CI #1 was in a position to obtain inside information to assist the police investigation, rendering a wiretap or other electronic surveillance unnecessary. The government responds, and the district court agreed, that although CI #1 was able to learn some information about the family drug business, he was unable to get information about the source of the

drugs, where the leaders of the business hid drugs after transporting them from the source, or how the distribution of drugs and assets was done by higher-level members of the criminal enterprise. Additionally, CI #1 was set to return to custody, rendering him unable to assist the government by conducting controlled buys or providing inside information for much longer.

Wiretaps should not be "routinely employed as the initial step in an investigation." United States v. Macklin, 902 F.2d 1320, 1326 (8th Cir. 1990). But § 2518(1)(c) "does not require that law enforcement officers exhaust all possible techniques before applying for a wiretap." Id. Even if CI #1 could have provided some additional useful information, that fact alone does not render the issuance of the wiretap unlawful. As the magistrate judge found, "the efforts of the investigative team in this case established what measures had been taken to attempt to fully investigate the conspiracy and that those measures did not yield the full information the investigative team sought and required to go forward with the prosecution of those it found responsible." The district court adopted these findings. We cannot say the district court clearly erred in this determination. See West, 589 F.3d at 939 (concluding the district court did not clearly err in finding the government proved necessity by showing its attempts to investigate the suspects and that options aside from a wiretap would be ineffective or dangerous if utilized); United States v. Shaw, 94 F.3d 438, 441–42 (8th Cir. 1996) (concluding the district court did not clearly err in finding the government had utilized all ordinary measures likely to be successful and had adequately set forth that other methods of investigation were likely to fail or were too dangerous to attempt).

### 3. Combination Order

On April 4, 2011, the government applied for both a wiretap order and a PLI warrant in a joint application. The district court issued an "Order Authorizing

Interception of Wire Communications" (Combination Order).[9]  The Combination Order permitted the interception of wire communications from Corey Turner's cell phone.  See 18 U.S.C. § 2516.  The wiretap portion of the Combination Order is not at issue on appeal.  Instead, Corey Turner challenges the portion of the Combination Order that permitted the collection of PLI for his cell phone.

It is helpful to focus, first, on what Corey Turner does not assert.  He does not argue that a request for a wiretap order and a request for a traditional warrant cannot

---

[9]The Combination Order also specified that

> [P]ursuant to Rule 41(b) of the Federal Rules of Criminal Procedure, . . . [the relevant] communication service providers, as defined in Section 2510(15) of Title 18, United States Code, during the authorized period of the interception . . . shall . . . provid[e] all information, facilities and technical assistance needed to ascertain the physical location of [Corey Turner's cell phone], including but not limited to data indicating the specific latitude and longitude of (or other precise location information concerning) [Corey Turner's cell phone], . . . for a period of thirty (30) days.

The court further ordered the disclosure of the

> Requested Location Information concerning [Corey Turner's cell phone], and initiat[ation of] a signal to determine the location of [Corey Turner's cell phone] on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times as directed by the law enforcement agent serving the proposed order, and shall furnish the technical assistance necessary to accomplish the acquisition unobtrusively and with a minimum of interference with such services as that provider accords the user(s) of [Corey Turner's cell phone], at any time of day or night, owing to the potential need to locate [Corey Turner's cell phone] outside of daytime hours.

be included in the same application. We agree that such an argument would fail. See United States v. Barajas, 710 F.3d 1102, 1109 (10th Cir. 2013) ("[N]othing in the Fourth Amendment prevents us from considering whether certain facts in the affidavit support probable cause for the GPS data *in addition to* the wiretaps. Warrants frequently authorize a search of more than one place, and one set of facts may provide probable cause for both searches."). Corey Turner also does not argue that the application in support of the request for PLI for his cell phone lacked probable cause.[10] See United States v. Gabrio, 295 F.3d 880, 882 (8th Cir. 2002) ("The Fourth Amendment requires a showing of probable cause to support a search warrant."). Corey Turner does argue that in the joint application the government requested a warrant to obtain PLI for his cell phone without obtaining a stand-alone warrant that meets the procedural requirements of Federal Rule of Criminal Procedure 41. He asserts that any evidence seized as a result of that PLI request for his cell phone should be suppressed.

Corey Turner is correct that no separate warrant to obtain the PLI from his cell phone was issued pursuant to Rule 41. But the government counters that it nevertheless complied with all procedural requirements of Rule 41, albeit not in a traditional manner in all instances, and that suppression is not warranted. The issuance of a Combination Order granting both wiretap authorization and permission to seize PLI from a cell phone, without a stand-alone Rule 41 warrant, presents several challenging and relatively novel issues for our review.

---

[10]The other constitutional requirements of a warrant were also met in this case: The Combination Order met the particularity requirement by identifying both the phone to be tracked and the type of information to be obtained, and no one disputes the Combination Order was issued by a neutral and disinterested magistrate. See Dalia v. United States, 441 U.S. 238, 255 (1979) (describing constitutional requirements for warrants).

As an initial matter, Corey Turner asserts that law enforcement essentially converted his cell phone into a tracking device as that term is defined in 18 U.S.C. § 3117(b) and referenced in Rule 41. Neither party briefed this issue on appeal, and we are reluctant to resolve an issue like this without adversarial briefing. The government's approach on appeal is to assume, without conceding, this fact for purposes of analyzing whether Rule 41 procedures were adhered to. We will do the same and assume, without deciding, that the cell phone in this case should be treated as a tracking device for purposes of the procedural requirements of Rule 41.[11]

Rule 41 requires that a warrant for a tracking device "must identify the person or property to be tracked, designate the magistrate judge to whom it must be returned, and specify a reasonable length of time that the device may be used." Fed. R. Cr. P. 41(e)(2)(C). In this case, the Combination Order identified Corey Turner's cell phone by phone number and by its International Mobile Subscriber Identity number and described it as a "prepaid account" being used by Corey Turner, Sr. This description sufficiently identified the property, and resulting person, to be tracked. Indeed, Corey Turner does not argue otherwise.

The Combination Order does not "designate the magistrate judge to whom [the warrant] must be returned" as required in Rule 41(e)(2)(C). As the government points out, the Combination Order did require that reports be submitted to "this Court" regarding "what progress has been made toward achievement of the authorized objectives and the need for continued interception." The Combination Order does not, however, discuss the return of the "warrant" providing for the gathering of PLI. With regard to the time limit in Rule 41, the Combination Order does expressly limit

---

[11]Whether the requirements of a traditional warrant or a warrant for a tracking device are imposed on the Combination Order in this case is not likely to make a difference in the ultimate analysis and resolution of this issue because the alleged violations of Rule 41 are statutory in nature, not constitutional, regardless of which type of Rule 41 warrant the government was attempting to obtain.

the collection of PLI to a period of thirty days, which does not exceed Rule 41's outer limit of 45 days. See Fed. R. Cr. P. 41(e)(2)(C).

Rule 41 also requires that a warrant for a tracking device "command the officer to . . . complete any installation authorized by the warrant within a specified time no longer than 10 days." Fed. R. Cr. P. 41(e)(2)(C)(i). What "installation" means in the context of a cell phone is not clear. Given our approach to this issue on appeal, however, we will give Corey Turner the benefit of the doubt: The Combination Order fails to address the issue of installation in any way and fails to identify the specified time within which such installation must take place.[12] See id.

Rule 41(f) addresses the requirements for executing and returning the warrant. For a tracking device, the officer executing the warrant must include "the exact date and time the device was installed and the period during which it was used." Fed. R. Cr. P. 41(f)(2)(A). This was not done. The government argues the Sealing Application, filed after the electronic wiretap surveillance concluded, "functioned as a warrant return." Yet, nowhere in the Sealing Application (or the district court's order granting the Sealing Application) is the PLI, or the request to obtain PLI, ever mentioned. In fact, in the Sealing Application, the government expressly describes its April 4, 2011, application as one "for authorization to intercept *communications over* [Corey Turner's] telephone," making no reference to the PLI. (Emphasis added).

_____

[12]The government points out that the interception of wire communications shall continue "for a period of thirty days measured from the earlier of the day on which investigative or law enforcement officers first begin to conduct an interception under this Order or ten days after this Order is entered." This, the government asserts, is how the Combination Order complies with the requirement that any installation occur within 10 days. The quoted language applies only to the wiretap communications, however. The Combination Order does not include similar language in connection with the 30-day limit on the collection of PLI.

-12-

Similarly, no separate document regarding the PLI was returned to the court. See Fed. R. Cr. P. 41(f)(2)(B) ("Within 10 days after the use of the tracking device has ended, the officer executing the warrant must return it to the judge designated in the warrant.").

Additionally, the government failed to provide notice, or seek permission for delayed notice, to Corey Turner that his phone had been tracked, as required under Rule 41(f)(2)(C) and (f)(3).  The district court order granting the government's Sealing Application specifies "[t]hat the notification requirements to Title 18, United States Code, Section 2518(8)(d), be postponed as to all parties intercepted during this subject wire surveillance until further order of this Court."  The notice delay was provided for the wiretap communications, under § 2518(8)(d), but it was never requested by the government or provided by the district court regarding the PLI obtained pursuant to Rule 41.

In sum, a substantial number of Rule 41's procedural requirements for preparing, executing, and returning a warrant for a tracking device were not followed with respect to the seizure of PLI from Corey Turner's phone.  The government failed to designate a judge to which the warrant must be returned, return the warrant, execute the warrant by installing the device, provide the requisite date and time information for installation of the device, and provide notice following execution of the warrant.  See Fed. R. Cr. P. 41(e)(2)(C) and (f)(2).  The government applied for both wiretap surveillance and PLI in a joint application and received a Combination Order; in so doing, it appears that the procedures for the wiretap order were scrupulously followed, but the procedures for issuing a Rule 41 warrant were not. The question remaining is what remedy results from these violations of the federal rules.

"We apply the exclusionary rule to violations of Rule 41 only if a defendant is prejudiced or reckless disregard of proper procedure is evident." United States v. Bieri, 21 F.3d 811, 816 (8th Cir. 1994). "To determine prejudice, we ask whether the search would have occurred had the rule been followed. If so, there is no prejudice to the defendant." United States v. Hyten, 5 F.3d 1154, 1157 (8th Cir. 1993). We recognize that this case does not present a single or minor violation of Rule 41. See, e.g., United States v. Sigillito, 759 F.3d 913, 925 (8th Cir. 2014) (concluding that a minor violation of Rule 41—the officers' failure to leave a copy of the warrant at the location searched—did not justify exclusion). Here, a Rule 41 warrant was subsumed in a wiretap order, and a significant number of the procedural requirements in Rule 41 were overlooked or ignored. Despite these deficits, however, Corey Turner offers no argument that the search and ultimate seizure of the PLI associated with his cell phone would not have occurred had a stand-alone warrant issued and had Rule 41 been adhered to. See Bieri, 21 F.3d at 816.

Corey Turner also does not suggest the government acted in reckless disregard of Rule 41 when it failed to seek a separate warrant or follow the execution and return requirements of Rule 41. See United States v. Berry, 113 F.3d 121, 123 (8th Cir. 1997) (analyzing the "reckless disregard" issue as akin to "bad faith"). And the government prepared a 70-page affidavit in support of its joint application, providing far more evidence in support of the request for the Combination Order than it likely would have presented for a PLI warrant alone.

We are concerned about the number of Rule 41 violations in this case. The government requested both a wiretap order and a Rule 41 warrant, and the procedural requirements for both should have been followed. Without a showing of prejudice or a suggestion of reckless disregard, however, exclusion of the evidence is not the proper remedy. Id.; see also Hyten, 5 F.3d at 1157 ("Absent a constitutional

infirmity, the exclusionary rule is applied only to violations of Federal Rule 41 that prejudice a defendant or show reckless disregard of proper procedure."). Corey Turner has made no attempt to show either. Thus, under the facts and circumstances of this particular case, suppression of the evidence seized is not warranted, and the district court properly denied the motion.

## B. Testimony of Jerriereneika Dorsey

Donald Turner and Corey Turner both argue the district court erred by admitting Jerriereneika Dorsey's lay-opinion testimony about the meaning of certain drug-related terms used in intercepted phone calls. "We review evidentiary rulings of a district court for abuse of discretion, giving substantial deference to the district court's determinations, . . . [and] revers[ing] only if an error affects the substantial rights of the defendant or has more than a slight influence on the [jury's] verdict." United States v. Manning, 738 F.3d 937, 942 (8th Cir. 2014) (quotation and internal citations omitted) (last alteration in original).

Jerriereneika Dorsey was charged as a co-conspirator in this case, but she entered a plea agreement with the government and agreed to testify. During the first part of her testimony, Jerriereneika Dorsey described her involvement in the conspiracy. In the course of doing so, she defined several drug-related terms for the jury. These terms included "soft" and "hard" (powder cocaine and crack cocaine); "8-ball" (3.5 grams); "quarter" (7 grams); "hitting the licks" (taking drugs to customers); "blow" (powder cocaine); "cookie" (a large quantity of drugs); and "stack" (one thousand dollars, as in 12 stacks = $12,000). Neither defendant objected to this testimony, and this testimony is not challenged on appeal.

The government then asked Jerriereneika Dorsey to listen to several intercepted telephone calls between other members of the conspiracy—including Corey Turner and Donald Turner—and to interpret some of the words and phrases used in those conversations. During this portion of her testimony, Jerriereneika Dorsey testified about what Corey Turner, Donald Turner, and others meant when they used different words and phrases. For example, she testified "clock" meant scale; "going to the store" meant going to get drugs; "2 Gs" meant 2 grams; "change" meant money; "lick" meant customer; "O" meant ounce; "hit a lick" meant to make some money; and "fifteen" or "little pack" meant a small quantity of drugs. The government did not qualify Jerriereneika Dorsey as an expert pursuant to Federal Rule of Evidence 702 before she testified about these terms. Instead, the government offered, and the district court admitted, this testimony pursuant to Rule 701 as opinion testimony by a lay witness. This is the testimony that defendants objected to at trial and that is at issue on appeal.

Pursuant to the Federal Rules of Evidence, a lay witness may only provide opinion testimony that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. "Personal knowledge or perceptions based on experience [are] sufficient foundation for lay opinion testimony." United States v. Faulkner, 636 F.3d 1009, 1018 (8th Cir. 2011) (quotation omitted). But "[l]ay opinion testimony is admissible only to help the jury or the court to understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events." United States v. Peoples, 250 F.3d 630, 641 (8th Cir. 2001).

The district court in this case found that "with regard to what [Jerriereneika Dorsey] interprets the meaning to be, she's giving a lay opinion as a co-participant or a co-conspirator, and for that reason the Court believes that's proper testimony." But Jerriereneika Dorsey did not testify about these telephone calls based on her "personal knowledge or perceptions." She was not a participant in most of the conversations she interpreted during her testimony, nor was she a witness to the events described in those conversations. Instead, the government asked her to interpret words and phrases used in the drug trade, just as it might ask a law enforcement officer to do. See Peoples, 250 F.3d at 641; see also Fed. R. Evid. 701, 702.

We recognize that Jerriereneika Dorsey is not a law enforcement officer. And she was a participant in the same charged conspiracy as Donald Turner, Corey Turner, and the others recorded in the calls, suggesting she may indeed have had firsthand knowledge of how members of the conspiracy used the terms and phrases she defined. But her testimony was not focused on how the members of this particular conspiracy used specific words or phrases based on her personal interactions with those individuals. To offer Jerriereneika Dorsey's testimony based on her specialized knowledge of terminology used in drug trafficking—and not based on her own participation in, or personal knowledge of, the recorded conversations—the government needed to qualify her as what she was: an expert. See United States v. Delpit, 94 F.3d 1134, 1145 (8th Cir. 1996) ("It is well established that experts may help the jury with the meaning of jargon and codewords."); cf. United States v. Johnson, 28 F.3d 1487, 1496 (8th Cir. 1994) (district court properly allowed unindicted co-conspirator to testify pursuant to Fed. R. Evid. 702 as an expert on drug trafficking based on his "extensive experience in the business of drug trafficking").

To the extent that Jerriereneika Dorsey was improperly allowed to offer testimony based on her specialized knowledge, rather than based on her personal knowledge of the charged conspiracy, we do not think the error affected the jury's verdict. Jerriereneika Dorsey had already described several terms and phrases without objection. And two other witnesses interpreted similar words and phrases for the jury without objection, including terms for quantities of drugs such as "zip," "quarter," "8-ball," and "dime." Other witnesses also defined "rock," "clock," "tickets," "quick flip," "butter," "rack," and "licks" for the jury. While Jerriereneika Dorsey defined additional terms, we do not believe these were sufficiently different in kind and scope to warrant a new trial. Cf. United States v. Londondio, 420 F.3d 777, 789 (8th Cir. 2005) (holding that admission of hearsay evidence that is cumulative of properly admitted evidence "is not likely to influence the jury and is therefore harmless error").

## C. Admission of Prior Convictions

Each defendant argues that the district court improperly allowed the government to introduce one or more prior convictions into evidence at trial. Each defendant first challenges the admission of a prior drug-possession conviction. Donald Turner also challenges the admission of his 2002 conviction for distribution of cocaine and his 2008 conviction for distribution of crack cocaine. Antonio Turner challenges the admission of 2002 convictions for sale and distribution of crack cocaine.

Evidence of a defendant's prior convictions is inadmissible to show a defendant's "criminal propensity," United States v. Pierson, 544 F.3d 933, 940 (8th Cir. 2008), that is, to show a defendant's character or that he "acted in accordance with the character," Fed. R. Evid. 404(b)(1). This evidence may be admissible,

however, for other purposes, including to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). For evidence of a prior conviction to be admissible, the party seeking to admit the evidence must show it is "(1) relevant to a material issue; (2) similar in kind and not overly remote in time to the crime charged; (3) supported by sufficient evidence; and (4) higher in probative value than prejudicial effect." United States v. Trogdon, 575 F.3d 762, 766 (8th Cir. 2009) (quotation omitted); see Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ."). Although Rule 404(b) excludes propensity evidence lacking an admissible purpose, we consider the rule one of inclusion. United States v. Molina, 172 F.3d 1048, 1054 (8th Cir. 1999). We review the admission of evidence of prior convictions for abuse of discretion and will reverse that ruling "only if it is clear that the evidence admitted had no bearing on any material issue and was offered solely to prove the defendant's criminal propensity." Peoples, 250 F.3d at 638.

The introduction of these prior drug-related convictions at trial gives us pause. The government sought to admit this evidence as relevant to show each defendant's intent or knowledge. See Trogdon, 575 F.3d at 766 (evidence of prior conviction must be "relevant to a material issue"). But the government never explained *what* intent or knowledge the prior convictions purportedly showed or how this evidence was relevant to a particular offense charged. We recognize the ample precedent in this circuit suggesting evidence of a prior drug conviction is nearly always admissible to show a defendant's knowing participation in the charged crime or his intent to participate in it. See, e.g., United States v. Horton, 756 F.3d 569, 579 (8th Cir. 2014); United States v. Gipson, 446 F.3d 828, 831 (8th Cir. 2006); United States v. Frazier, 280 F.3d 835, 847 (8th Cir. 2002); United States v. Williams, 895 F.2d 1202, 1205

(8th Cir. 1990). But that precedent should not invite passive treatment of the Federal Rules of Evidence.

Instead, the government, as the proponent of the evidence, must be prepared to show a permissible purpose for admission of the prior conviction. In a drug-conspiracy case, intent and knowledge will always be at issue because they are elements of the charged offense. See Eighth Circuit Manual of Model Criminal Jury Instructions § 6.21.846A (2014) (requiring government to prove, among other elements, that defendant "*intentionally* joined in the agreement" and "*knew* the purpose of the agreement") (emphasis added). But Rule 404(b) requires more. Simply asserting—without explanation—that the conviction is relevant to a material issue such as intent or knowledge is not enough to establish its admissibility under the Federal Rules. See United States v. Mothershed, 859 F.2d 585, 589 (8th Cir. 1988) ("We consider 404(b) a rule of inclusion . . . . But this does not mean that all such evidence is admissible simply on invocation of the Rule." (quotation and internal citation omitted)); United States v. Miller, 673 F.3d 688, 696 (7th Cir. 2012) ("Rule 404(b) does not provide a rule of automatic admission whenever bad acts evidence can be plausibly linked to 'another purpose,' such as knowledge or intent, listed in the rule."). Even under an inclusive view of Rule 404(b), a prior conviction is admissible only if certain requirements are met: It must be relevant in the particular case *and* it cannot be impermissible propensity evidence. See Rule 404(b)(1), (2) (providing that evidence of prior bad acts "may be admissible for another purpose," but it is "not admissible" to prove criminal propensity); see also Old Chief v. United States, 519 U.S. 172, 181 ("'Although . . . propensity evidence is relevant, the risk that a jury will convict for crimes other than those charged—or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment—creates a prejudicial effect that outweighs ordinary relevance.'" (quoting United States v. Moccia, 681 F.2d 61, 63 (1st Cir. 1982) (Breyer, J.)) (internal quotation marks

omitted)); <u>Miller</u>, 673 F.3d at 697 (explaining that trial judges "must balance the relevance of the proposed use of the evidence . . . against the high risk that the evidence will also . . . [establish] propensity to commit the charged crime").

Before evidence of a prior conviction is admitted, the district court should ask why the government seeks to admit it. How, for example, is Corey Turner's 1995 conviction for possession of cocaine relevant to his intent to join a drug conspiracy in 2010? Or how is Donald Turner's 2002 conviction for distribution of cocaine relevant to show he had knowledge of the 2010 cocaine-distribution conspiracy, or that he intended to join it? <u>See</u> <u>United States v. Caldwell</u>, 760 F.3d 267, 282 (3d Cir. 2014); <u>Miller</u>, 673 F.3d at 699. If the only answer to these questions is that his prior conviction (*i.e.,* wrongdoing) shows he intended to commit another wrongdoing (*i.e.*, the 2010 conspiracy), then the evidence shows nothing more than criminal propensity and under Rule 404(b)(1) is inadmissible. <u>See</u> <u>Mothershed</u>, 859 F.2d at 589. If, on the other hand, the government offers a relevant, non-propensity purpose for the evidence, the court should then determine whether admission of that evidence is nevertheless substantially more prejudicial than probative. Only if these types of questions are asked, and adequately answered, can the district court determine whether evidence of prior bad acts, including prior convictions in drug cases, may be admitted pursuant to Rule 404(b) or whether it must be excluded because it is offered solely to prove criminal propensity or is substantially more prejudicial than probative. <u>See</u> <u>Pierson</u>, 544 F.3d at 940; Fed. R. Evid. 403.

These questions were not asked or answered in this case. On appeal, the government simply asserts the evidence is relevant against Donald and Antonio Turner for the same singular reason: "Donald [and Antonio] Turner's general denial defense placed his state of mind at issue, and the Rule 404(b) evidence was relevant to show his intent and knowledge." So we are left with little more than recitation of

the Rule, without a careful analysis of how it applies to the prior convictions offered as evidence at trial.

Given the extent and nature of the evidence presented against the defendants, however, if there was any error in the admission of this evidence, that error was harmless. The government presented considerable other evidence in this case against each defendant to support the jury verdict, including recorded phone conversations and controlled buys as well as co-conspirator testimony describing each defendants' role in the conspiracy. As a result, in this particular case, we cannot say that evidence of these prior convictions had a "substantial and injurious effect or influence in determining the jury's verdict." See United States v. Mejia-Uribe, 75 F.3d 395, 399 (8th Cir. 1996) (quotation omitted).

## D. Admission of Antonio Turner's Arrest and Video

Antonio Turner was arrested on March 12, 2011, after a traffic stop, and the arrest was videotaped by law enforcement. Antonio Turner filed a motion to suppress any statements he made during the encounter with the officers, but the district court denied it. On appeal, he argues the district court erred "in allowing, over [his] objections, any admission by Antonio Turner concerning his arrest on March 12, 2011." At trial, the government did offer the video of his arrest as evidence, but the video was played to the jury without sound. Antonio Turner makes no allegation that, contrary to the trial record, the jury heard any of the conversations recorded on the video. Because any statements Antonio Turner may have made during his arrest were not admitted at trial, any alleged error in denying the motion to suppress those

statements is harmless.[13]  See United States v. Jones, 801 F.2d 304, 313 (8th Cir. 1986) (holding that error was not prejudicial because evidence to be suppressed was never entered at trial and defendant failed to "allege that the government bolstered its case in any way with the evidence it discovered").

## E. Donald Turner's Motion for Judgment of Acquittal

At the close of the government's case, Donald Turner moved for judgment of acquittal on the conspiracy count, asserting that the majority of the government's evidence to support his involvement in the conspiracy came from self-interested witnesses who lacked credibility—specifically Joe Lenzie Turner and Jerriereneika Dorsey.  As a result, he argued, there was insufficient evidence presented at trial to link him to, and convict him of, a conspiracy to possess with intent to distribute cocaine.  The district court denied the motion.

We review the district court's denial of a motion for judgment of acquittal based on the sufficiency of the evidence de novo and "affirm unless, viewing the evidence in the light most favorable to the Government and accepting all reasonable inferences that may be drawn in favor of the verdict, no reasonable jury could have

---

[13]The district court also denied Antonio Turner's motion to suppress "physical evidence."  Antonio Turner does not appeal this ruling.  He does assert that "the evidence seized as a result of the questioning" that took place before Antonio Turner was given Miranda warnings must also be suppressed, but he does not identify what evidence the district court erroneously failed to suppress.  Because Antonio Turner fails in his burden to show a nexus between any physical evidence presented at trial and his allegedly custodial statements, we decline to address this argument on appeal. See United States v. Hastings, 685 F.3d 724, 728 (8th Cir. 2012) (concluding the defendant "bears the burden of establishing a nexus between the alleged constitutional violation and the discovery of the [evidence to be suppressed]").

found [the defendant] guilty." United States v. Chatmon, 742 F.3d 350, 352 (8th Cir. 2014) (quotation omitted) (alteration in original). "In reviewing the sufficiency of the evidence, however, we do not review the credibility of the witnesses." United States v. Tarnow, 705 F.3d 809, 814 (8th Cir. 2013). "It is the function of the jury, not an appellate court, to . . . judge the credibility of witnesses. Such credibility findings are virtually unreviewable on appeal." Id. (quotation omitted) (alteration in original).

At trial, the government relied heavily on cooperating witnesses to describe for the jury the nature and scope of the alleged conspiracy. Joe Lenzie Turner testified that he bought cocaine with Donald Turner, that Donald Turner had driven him to pick up cocaine, and that he sold cocaine to Donald Turner for re-distribution. Jerriereneika Dorsey's testimony concerning Donald Turner's involvement in cocaine trafficking was more limited, but she did tell the jury that Donald Turner had "put[] money in" for quantities of cocaine.

Donald Turner's sole argument on appeal is that these witnesses were not credible. At trial, the jury heard that both of them had entered cooperation plea agreements. The jury learned about the terms of those agreements and the witnesses' expectations in signing them. In addition, before each of these witnesses testified, the district court specifically instructed the jury: "You may give the testimony of this witness such weight you think it deserves. Whether or not the testimony of a witness may have been influenced by [his or her] hope of receiving a reduced sentence is for you to decide." The jury had a full opportunity to make its own credibility determinations about both Joe Lenzie Turner and Jerriereneika Dorsey, and the district court specifically instructed it to do so. Like the district court, we will not weigh the credibility of witnesses. See United States v. Seibel, 712 F.3d 1229, 1237 (8th Cir. 2013). The district court did not err in denying Donald Turner's motion for judgment of acquittal.

## F. Sufficiency of the Evidence Regarding Antonio Turner

Antonio Turner asserts the evidence at trial was insufficient to support his conviction for conspiracy. To establish this charge, the government has the burden of showing there was a conspiracy, that the defendant knew of the conspiracy, and that the defendant intentionally joined the conspiracy. United States v. Aguilar, 743 F.3d 1144, 1148 (8th Cir. 2014). Antonio Turner argues the evidence failed to show he either knew of or intentionally joined the conspiracy. We review "the sufficiency of the evidence in a jury trial *de novo*, but we examine the evidence in a light most favorable to the jury's verdict, resolving factual disputes and accepting all reasonable inferences in favor of upholding the verdict." Manning, 738 F.3d at 945 (internal citation omitted). "We will affirm a jury's verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (quotation omitted).

At trial, Joe Lenzie Turner testified about Antonio Turner's involvement in the conspiracy. According to Joe Lenzie Turner, Antonio Turner was distributing drugs in 2009; and in 2010, he was getting cocaine from Joe Lenzie Turner in one to two ounce quantities for re-distribution. Joe Lenzie Turner also testified that after Antonio Turner was released following his March 2011 arrest, an uncle provided Antonio Turner with drugs for distribution; Joe Lenzie Turner later resumed supplying drugs to Antonio Turner. Joe Lenzie Turner also told the jury that Antonio Turner knew how to cook powder cocaine into crack cocaine and that Antonio Turner "did real good business. He got rid of his drugs fast and paid me good." And the jury heard intercepted phone conversations between Joe Lenzie Turner and Antonio Turner during which they talked about cocaine sales and meetings relating to the drug operation.

Finally, the jury heard evidence that a confidential informant conducted three controlled buys of cocaine from Antonio Turner in 2010, all of which were monitored and recorded by law enforcement. This same informant testified that Antonio Turner was one of his sources for both powder and crack cocaine for approximately one year prior to the controlled transactions. Viewing the evidence presented at trial in the light most favorable to the jury's verdict, a reasonable jury could have found Antonio Turner guilty beyond a reasonable doubt on the conspiracy charge. Manning, 738 F.3d at 945.

## G. Antonio Turner's Sentencing

Antonio Turner argues the district court erred at sentencing by failing to provide an individualized assessment of the drug quantity attributable to him in determining the appropriate advisory Guidelines range. When reviewing the district court's determination of the applicable Guidelines range, we review factual findings for clear error and the district court's "construction and application of the Guidelines de novo." United States v. Pappas, 715 F.3d 225, 228 (8th Cir. 2013) (quotation omitted).

Antonio Turner's sentence was not determined by the drug-quantity calculation made at sentencing. Instead, it was dictated by the statute. The jury found Antonio Turner guilty of one count of conspiracy to possess with intent to distribute five kilograms or more of cocaine and one count of distribution of cocaine.[14] See 21 U.S.C. § 841(b)(1)(A)(ii). Because the government gave notice of its intent to seek

_____

[14]The distribution charge was not accompanied by a drug quantity. However, it was Antonio Turner's conviction on the conspiracy charge, not on the distribution charge, that resulted in a mandatory sentence of life imprisonment.

an enhanced penalty pursuant to 21 U.S.C. § 851, Antonio Turner, upon conviction for the charged conspiracy, faced a mandatory sentence of life imprisonment as a result of his prior convictions. See 21 U.S.C. §§ 841, 851. The district court concluded Antonio Turner did in fact have two prior qualifying convictions and imposed a sentence of life imprisonment. At that point, the advisory Guidelines range and the statutory mandatory minimum sentence became the same. USSG § 5G1.2 cmt. n.3(B) ("In particular, where a statutorily required minimum sentence on any count is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence on that count shall be the guideline sentence on all counts."). Any alleged error in the calculation of the total quantity of drugs attributable to Antonio Turner for purposes of determining his Guidelines range was harmless; based on his two prior felony drug convictions, the district court had no choice but to impose a life sentence.

## H. Admission of Cocaine Quantities

Donald Turner asserts the district court erred when it admitted at trial evidence of cocaine seized by law enforcement on three separate occasions—August 20, 2010; March 12, 2011; and June 21, 2011—because he had no connection to those drug quantities. "We review a district court's evidentiary rulings for clear abuse of discretion, reversing only when an improper evidentiary ruling affected the defendant's substantial rights or had more than a slight influence on the verdict." United States v. Espinoza, 684 F.3d 766, 778 (8th Cir. 2012) (quotation omitted). Donald Turner failed to object to the inclusion of this evidence at trial, so plain-error review applies. Id.

We find no plain error. "In a conspiracy case, each member of a conspiracy may be held criminally liable for any substantive crime committed by a co-conspirator

-27-

in the course and furtherance of the conspiracy, even though those members did not participate in or agree to the specific criminal act." Id. (quotation omitted). "[S]o long as the partnership in crime continues . . . an overt act of one partner may be the act of all without any new agreement specifically directed to that act." Pinkerton v. United States, 328 U.S. 640, 646–47 (1946) (quotation omitted). The cocaine seized on the three dates at issue was sold, purchased, possessed, or distributed by individuals shown at trial to be part of the same charged conspiracy. Donald Turner argues he was not a participant in those criminal acts. Donald Turner may not have been directly involved in these transactions, but that is not the standard for determining whether the evidence is admissible. Evidence at trial showed that Donald Turner was a member of a conspiracy that included the individuals involved in the three contested incidents, and evidence of the seized cocaine on these occasions was relevant to show the nature and extent of the conspiracy. See United States v. Johnston, 353 F.3d 617, 624 (8th Cir. 2003) (co-conspirator "can still be held responsible for the reasonably foreseeable [controlled] buys that occurred on behalf of the conspiracy" even if he was not directly involved in those buys).

## I. Filing of § 851 Notice

Donald Turner contends his right to due process was violated when the government failed to provide proper notice of the prior convictions it relied on to seek an enhanced sentence pursuant to 21 U.S.C. § 851. As a result, he argues, his sentence was unlawfully enhanced. "We review de novo whether the government's notice complied with § 851." United States v. Higgins, 710 F.3d 839, 844 (8th Cir. 2013). At issue in this case is the government's April 3, 2012, Information to Provide Notice of Enhanced Sentence (Information)—which listed four prior convictions—and its April 12, 2013, 1st Amended Information to Provide Notice of Enhanced Sentence (Amended Information)—which listed five prior convictions. At

sentencing, the government identified the two specific convictions it relied on for purposes of the enhancement: a 2000 conviction for felony possession of crack cocaine from Cape Girardeau County, Missouri; and a 2008 conviction for distribution of a controlled substance from Mississippi County, Missouri.

Donald Turner asserts his right to due process was violated when the government added a fifth prior conviction to the Amended Information. See United States v. Johnson, 462 F.3d 815, 823 (8th Cir. 2006) ("[T]he purpose of notice under § 851 is to comply with the constitutional requirements of due process."). The government did not, however, rely on this fifth, late-noticed conviction for the enhancement. As such, this alleged error did not affect Donald Turner's sentence.

Donald Turner also asserts that both the original Information and the Amended Information contained misinformation about the details of his prior convictions. With regard to the 2000 conviction, the Information erroneously stated that he had been convicted of the counts originally charged against him, rather than the count (felony possession of crack cocaine) to which he ultimately pleaded guilty. The Amended Information corrected the count of conviction but erroneously changed the date of conviction to the date of his guilty plea. With regard to the 2008 conviction, the Information misidentified the county of origin and mistakenly identified the offense of conviction as "Distribution, Delivery, and Manufacturing." The Amended Information corrected the county of origin and properly noted the conviction was for distribution of a controlled substance only.

Donald Turner asserts that "[t]hese clerical errors should have been correct [sic] 'prior' to trial." But the statute allows for the amendment of clerical errors "at any time prior to the pronouncement of sentence." 21 U.S.C. § 851; see Higgins, 710 F.3d at 844 (setting forth various clerical errors). The clerical errors in the

description of the 2008 conviction were properly amended by the Amended Information, and that document was filed before the pronouncement of Donald Turner's sentence.

Both the Information and Amended Information contained clerical errors describing the 2000 conviction. Under the particular circumstances of this case, however, we cannot say that Donald Turner did not receive the notice required by due process. First, the only error in the Amended Information regarding the 2000 conviction was the date of that conviction. But the correct date of the 2000 conviction was included in the originally filed Information. Donald Turner had sufficient information between the two documents to identify the conviction upon which the government relied.

Second, we note that Donald Turner stipulated at trial to both of the prior convictions used for the enhancement. A stipulation was read into the record at trial, stating that Donald Turner pleaded guilty to possession of cocaine base, in Cape Girardeau County, Missouri, on September 28, 2000, and was sentenced on October 16, 2000, and this conviction was identified by the same case number that was listed in both the Information and the Amended Information. The stipulation also included the 2008 conviction, correctly identifying the offense of conviction, the date of conviction, and the county of origin—specifically explaining the charge was originally filed in another county but was transferred to Mississippi County at a later date. This conviction also had the same identifying case number as in the Amended Information.

Third, the government offered at sentencing, without objection, the records supporting these two prior convictions. Donald Turner also concedes his prior

-30-

convictions were correctly stated in his PSR, which he reviewed before his sentencing hearing.

"The purpose of the § 851 notice requirement is to provide the defendant with notice of the prior conviction, the effect it would have on the maximum sentence, and an opportunity to dispute the conviction." Higgins, 710 F.3d at 844 (quotation omitted). The Information and the Amended Information, in combination, provided all of the correct information concerning the prior convictions used to enhance Donald Turner's sentence: The correct offense of conviction, the correct county of origin, the correct date of conviction, and the correct case number. Both the Information and the Amended Information also included the life sentence the government was seeking upon a conviction on the conspiracy count.

Any error in the Amended Information concerning the 2000 conviction did not deprive Donald Turner of his due process right of notice. See id. The better course of action would have been for the government to amend all of the clerical mistakes in the Information and Amended Information at some point prior to the pronouncement of sentence. On the record before us, however, we conclude that Donald Turner received "reasonable notice of the Government's intent to rely on . . . particular conviction[s] and a meaningful opportunity to be heard." United States v. Curiale, 390 F.3d 1075, 1076 (8th Cir. 2004).

Donald Turner also asserts he received ineffective assistance of counsel at sentencing. Such claims are typically more appropriately raised in a collateral proceeding under 28 U.S.C. § 2255. Because Donald Turner has not demonstrated his claim is an "exceptional case" allowing for our review on direct appeal, we

decline to address it.[15]  See United States v. Sanchez-Gonzalez, 643 F.3d 626, 628 (8th Cir. 2011).

## III. Conclusion

For the reasons above, we affirm Corey Turner's, Donald Turner's, and Antonio Turner's convictions and sentences.

_____

_____

[15]Because we decline to address Donald Turner's claim of ineffective assistance of counsel, we also deny the government's motion to strike that portion of Donald Turner's brief.